```
                    IN THE UNITED STATES DISTRICT COURT
                       SOUTHERN DISTRICT OF TEXAS
                         CORPUS CHRISTI DIVISION


ROSENDO ZAMORA,                      *    CIVIL ACTION
                                     *
          PLAINTIFF,                 *    CA-C-13-326
                                     *
VS.                                  *
                                     *
BAKER HUGHES, INCORPORATED,          *    CORPUS CHRISTI, TEXAS
                                     *    JANUARY 23, 2014
          DEFENDANT.                 *    1:24 P.M.
                                     *
* * * * * * * * * * * * * * * * *


           TRANSCRIPT OF INITIAL PRETRIAL CONFERENCE

              BEFORE THE HONORABLE HAYDEN HEAD
               SENIOR UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE PLAINTIFF:        MR. ADAM PONCIO
                          PONCIO LAW OFFICE, P.C.
                          5410 FREDERICKSBURG ROAD, SUITE 109
                          SAN ANTONIO, TEXAS 78229

                          MR. CHRISTOPHER EDWIN McJUNKIN
                          ATTORNEY AT LAW
                          2842 LAWNVIEW
                          CORPUS CHRISTI, TEXAS 78404

              (APPEARANCES CONTINUED ON PAGE 2)


COURT RECORDER:           MS. JUDITH F. ALVAREZ




       PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING
         TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE:
                MOLLY CARTER, P. O. BOX 270203
           CORPUS CHRISTI, TEXAS 78427 (361) 945-2525
```

```
 1   APPEARANCES:  (Continued)

 2

 3   FOR THE DEFENDANT:        MR. MICHAEL JAMES MUSKAT
                               MUSKAT, MARTINEZ & MAHONY
 4                             1201 LOUISIANA STREET, SUITE 850
                               HOUSTON, TEXAS 77002
 5
                               MR. JORGE C. RANGEL
 6                             THE RANGEL LAW FIRM
                               615 NORTH UPPER BROADWAY, SUITE 2020
 7                             CORPUS CHRISTI, TEXAS 78401-0782
```

```
1          (The proceedings began at 1:24 p.m.)
2          (Call to Order of the Court.)
3              THE CLERK:  C-13-326, Zamora versus Baker Hughes.
4    May I have appearances?
5              MR. PONCIO:  Yes, Your Honor.  Adam Poncio and Chris
6    McJunkin on behalf of Mr. Zamora.
7              MR. RANGEL:  Please the Court, Jorge Rangel for the
8    Defendant, along with Mr. Muskat, who I believe is on the
9    phone.  Mr. Muskat, Your Honor, is the attorney in charge, and
10   he got caught up in traffic problems in Houston.
11             THE COURT:  All right.
12             THE CLERK:  May I check if he's on the line, Your
13   Honor?
14             THE COURT:  All right.
15             THE CLERK:  Mr. Muskat, are you on the line?
16        (No response.)
17        (Dialing.)
18             THE CLERK:  Mr. Muskat, are you on the line?
19        (No response.)
20             THE COURT:  Can we just proceed without him?
21             MR. RANGEL:  Well, he is the one that has been
22   involved in the case from the beginning, has some knowledge,
23   might be able to answer some questions the Court may ask that I
24   may not.  And he's the one who participated in the Rule 26
25   meeting with Mr. Poncio.  I was in court somewhere else.  And
```

 1  so in terms of aiding the Court with respect to any questions
 2  the Court may have, I think he probably would be able to give
 3  you a more thorough response.
 4          (Dialing.)
 5              THE COURT:  Thank you, Brandy.
 6              THE CLERK:  Mr. Muskat, are you on the line?
 7              MR. MUSKAT:  Yes, I am.
 8              THE CLERK:  Thank you.
 9              THE COURT:  Hello.  How are you?  We've already
10  called the case, and I think you're the last attorney to speak.
11  This is Judge Head.
12              MR. MUSKAT:  Thank you, Judge Head.  I appreciate it.
13              THE COURT:  I started to call everybody anyway and do
14  this by phone, but I have read your discovery plan and your, we
15  have a proposed scheduling trial in, on the scheduling order in
16  October.  Is that an appropriate date?  Somehow I think that
17  it's not.  That's not the date you want, is it?  What date do
18  you want for trial?  Anybody.
19              MR. MUSKAT:  Your Honor, this is Mike Muskat.  We had
20  proposed a discovery cutoff in May of next year, to accommodate
21  the possibility of the case being certified as an FLSA
22  collective action.  And so work needed to be done, you know, in
23  terms of class litigation.  If that date is acceptable, then we
24  would imagine that a trial setting sometime in the fall of 2015
25  would be appropriate.

1          THE COURT: Mr. Poncio, do you want to speak for the
2  Plaintiff?
3          MR. PONCIO: Yes, Your Honor. That's our plan. Our
4  plan is first we've agreed to exchange or send out initial
5  discovery by February 14th. We'll do some discovery with
6  regard to, for example, we're unclear of the job title, for
7  example, for Mr. Zamora, but our intent is to seek conditional
8  certification of the class, and I think that's appropriate.
9          The way we, Mr. Muskat and I talked was let's get
10 past the conditional certification phase first, then do any
11 additional discovery. And for example, we're trying a case in
12 front of Judge Ramos where it took about two years -- we're
13 going to trial in February -- to get through all the windows
14 and the doors.
15         THE COURT: Hmm. Well --
16         MR. MUSKAT: That's right, Your Honor. And I would
17 imagine that the first part of the case will involve a
18 discussion as to whether or not conditional certification is
19 appropriate. We may or may not come to an agreement with, you
20 know, the Plaintiff about that. If not, I would imagine that
21 issue would get litigated and then ultimately decided by the
22 Court.
23         And then to the extent there is no class that is
24 certified, I think the case is simpler and we don't need quite
25 that much time. To the extent the case does get certified,

```
 1  though, I think we do run into heavier litigation, as
 2  Mr. Poncio could judge from his other experiences.  And so
 3  sometime later in 2015 makes sense to us for a trial setting.
 4              THE COURT:  Then I suggest that we do it the way the
 5  parties want.  I don't have a feeling about it one way or the
 6  other, if that's what you want to do.  So what we need to do
 7  then is to transpose the dates of the discovery plan into a
 8  scheduling order, rather than use the scheduling order that I
 9  have here, which I don't know if you've seen it or not -- I
10  guess you have seen it.
11              MR. PONCIO:  Yes, Judge.
12              THE COURT:  Which is not appropriate.
13              MR. PONCIO:  I agree, Judge.
14              THE COURT:  Okay.
15              MR. MUSKAT:  Likewise, Your Honor.
16              THE COURT:  All right.  So -- okay.  Well then, let's
17  go over these so I get this right.  Number one, a jury trial
18  date would be, let's just set it at the date you wanted it.  I
19  think I read in your proposal that it would be in 2015 in
20  October.  Is that correct?
21              MR. MUSKAT:  Yes, Your Honor.  I think -- I don't
22  know if our plan specified a trial date.  It did specify a
23  discovery cutoff, I think May 31st, 2015.
24              THE COURT:  I thought --
25              MR. MUSKAT:  I have not discussed this with
```

1  Mr. Poncio, but let me throw this out there, November, early
2  November 2015 as a potential trial date.
3        MR. PONCIO:  That's fine, Your Honor.
4        THE COURT:  First Monday, Sylvia?
5        THE CLERK:  The first Monday of November, Judge, is
6  November the 2nd.
7        THE COURT:  What do we need to do to establish some
8  date for the presentation of the issue, first to you and then
9  to me, about whether or not there should be a class certified?
10 I mean, how much time do you think you need to get the case
11 together for that sort of a determination?
12       MR. PONCIO:  I think from past experience, Judge,
13 what typically happens is we do some initial paper discovery --
14 I'm sorry -- we do some initial paper discovery.  Then we may
15 schedule a few depositions, of corporate representatives, for
16 example.  They may want to depose the class representative or
17 who would move to be class representative.
18       Then, Your Honor, we file the motion for a
19 conditional certification.  So you're probably looking at a
20 four-month -- four-month, five-month window for the conditional
21 certification motion.
22       THE COURT:  Okay.  Here's what we're going to do.  I
23 would like the two of you to draft a scheduling order that
24 takes into account the contingencies.  What I'd like you to do
25 is to draft a scheduling order that acknowledges that you are

1  pointing initial discovery in the direction of determination of
2  whether or not the case should have some sort of FSLIC (sic)
3  class certification.
4       So that would require you to establish what you're
5  going to do initially, and then when you're going to get that
6  together in your own minds, and then when you're going to get
7  it together for me. Right?
8       MR. PONCIO: Yes, Judge.
9       THE COURT: That's all we want to do right now.
10      MR. PONCIO: Okay.
11      THE COURT: Put that together in a scheduling order.
12 Give it to me. We'll make that decision -- first of all, you
13 make it -- and it's not going to be, I don't think it's going
14 to have any significant difference in terms of when you get to
15 trial. That is, I don't think this approach will take, take us
16 longer than -- so that we couldn't have the trial in the fall
17 of 2015, if it's class certified. Otherwise, we can move it up
18 before that hopefully.
19      So I think rather than prepare something from a
20 scheduling order that's not really meant for this case, this
21 form, let's don't do that. You put together what you need. I
22 don't care -- I don't think you ought to try to establish two
23 dates for trial. I think what you ought to do right now is to
24 focus on this issue, which seems to be primary. If you want to
25 conduct discovery on the rest of the issues as you go along,

1  that's fine, as long as you meet whatever deadline you would
2  like to meet with respect to establishing when you want to get
3  it to me.
4          If it's agreed, then I suggest we get together on the
5  telephone and say, you know, "Judge, we've agreed, and we need
6  some more direction here where we're going from now."
7          If it's not agreed, then I think you can prepare -- I
8  don't know what you would need.  If it's not agreed, notify the
9  Court, and we'll proceed from that point.
10         But I think just conduct your discovery, and then
11 notify me what you've decided.  If you need assistance from the
12 Court after that in helping you decide whether or not it should
13 or should not be, then I can -- we can, in a briefing order, we
14 can establish the dates, we can establish an argument date and
15 do it that way.
16         I don't know what it will take to get you in shape to
17 present such a matter, from an evidence standpoint, to me.  I
18 don't know what you would require.  And I think to do more than
19 that at this time is just playing games with dates.
20         MR. PONCIO:  That will work, Your Honor.
21         THE COURT:  Is that okay with you, Mr. Muskat?
22         MR. MUSKAT:  Yes, Your Honor. And let me just make
23 sure I understand.  So at this point you are not looking for us
24 to come up with any deadlines or proposed deadlines, other than
25 a deadline by which the Plaintiff will file the motion for

conditional certification of a class, or I guess the parties otherwise notify the Court that we've agreed.

I think what we ought to do is set your discovery deadline for the purpose of that, and then notification to the Court of whether you agree or not agree. And at that point, see what you have insofar as discovery is concerned, because you don't know, I guess at this point, how much discovery you're going to undertake and what it's going to mean in terms of who the parties should be, how big the class should be, and what evidence is going to need to be presented to the Court so I can say yes or no.

So I would say just get your discovery done, which you have -- what date did you want for that? May -- wasn't that in May? Is that what I remember?

MR. PONCIO: That was May of 2015.

THE COURT: May of 2015. Just do it in May of 2015. But that certainly seems a long time to decide such an initial matter.

MR. PONCIO: No, that was contemplating --

THE COURT: I just want your, I just want your, your date for your discovery to get to this point, to get --

MR. PONCIO: Yes, Judge, that was contemplating final discovery in the case.

THE COURT: We'll set that when we reach this decision on certification, so --

1  MR. PONCIO: Yes, Your Honor.
2  THE COURT: You know, how much time do you need on
3  this initial phase?
4  MR. PONCIO: We're probably looking at, like I said,
5  five or six months. Our disability is that we have a trial
6  starting next month, so that will take up most of February, is
7  what I'm assuming.
8  THE COURT: Just tell me.
9  MR. PONCIO: Six months, Judge.
10  THE COURT: Is that what you want to do, Mr. Muskat?
11  MR. MUSKAT: Six months is fine with me, Your Honor.
12  THE COURT: Is it too much? Too little? Okay? Not
13  okay? Six months, okay.
14  MR. MUSKAT: Yeah, that works for us.
15  THE COURT: Okay.
16  MR. MUSKAT: Six months would be fine.
17  THE COURT: All right. Six months it is. And then
18  that -- so Sylvia, what is six months from today?
19  THE CLERK: Would be July -- I guess July the 23rd,
20  Your Honor.
21  THE COURT: Okay. Notify us on July the --
22  THE CLERK: That's on a Wednesday.
23  THE COURT: Notify us on July the 23rd when we need
24  to, or what you need to do. Actually, notify me that Monday.
25  I want -- that week, I will want to have a conference call.

1  Matter of fact, set Monday, Sylvia, at 1:15 for that
2  notification call to us.
3       You will have already known whether or not you will
4  need certification.  On that Monday, give me your dates, if
5  you're in a dispute about class issues, for submission of
6  briefs, argument, so we can get that worked out.  I will want
7  to get that done in that phone conversation.
8       MR. PONCIO:  Yes, Judge.
9       MR. MUSKAT:  Yes, Your Honor.
10      THE COURT:  I think at that point you can also take
11 me farther, if you want, and say, "We can do some more dates at
12 this point.  We know now we're in this position."
13      You know, if for some reason you decide not to seek
14 certification, then we may move this trial a whole lot quicker.
15 Let's just leave it at that right now.
16      MR. PONCIO:  Okay.
17      THE COURT:  I would like to know just a little bit
18 more about the case.  Where are these workers located?
19      MR. PONCIO:  Mr. Zamora, Your Honor, is out of the --
20 Corpus Christi area?
21      UNIDENTIFIED SPEAKER:  South Texas.
22      MR. PONCIO:  He's in the South Texas region for Baker
23 Hughes Oilfield Operations, which we've identified, or they
24 claimed we've misidentified as Baker Hughes, Incorporated.
25      THE COURT:  Now, where does Baker Hughes do its

```
 1  oilfield operations?
 2          MR. PONCIO:  Judge, these are -- what their position
 3  is, it's something called a sit hand, or in other, with other
 4  companies they're called sit hands, closed loop operators,
 5  where they monitor the handling of the fluids.  It's fluid
 6  control with regard to drilling rigs.
 7          The drilling rigs will use fluids that they pump down
 8  into the ground.  They come back out.  These companies use
 9  shakers, vortex dryers, other machinery to clean up that
10  material and make sure that they take out all the scraps, drill
11  bits, other stuff that might affect the continued operation of
12  the equipment for the rig owner.
13          What we're claiming, Your Honor, is that these
14  employees were not paid overtime and not paid for all their
15  work on these shifts.  They worked on either a two-man crew or
16  a one-man crew.  If they are a one-man crew, when they were
17  paid hourly, they were only allowed to bill 16 hours, even
18  though they were working and on duty for 24 hours.  When they
19  were a two-man crew, they billed for 12 hours.  They weren't
20  paid on either the two-man or one-man crew when they were
21  required to go out and work after their supposed shift had
22  ended.
23          We're also alleging they weren't paid for safety
24  meetings that they attended or were required to attend for the
25  benefit of the company, that they weren't paid for donning and
```

doffing of required safety equipment, specialized safety equipment that they had to wear for the job, those types of --

THE COURT: Okay. Let me ask this question: Are all of these people onshore employees?

MR. PONCIO: Yes, Your Honor.

THE COURT: As opposed to offshore employees?

MR. PONCIO: Yes, Your Honor. The class we're seeking is onshore.

THE COURT: Are all of them in Texas?

MR. PONCIO: The ones we're seeking are in Texas.

THE COURT: Are all of them in South Texas?

MR. PONCIO: Yes, Your Honor. That's the class we're looking at.

THE COURT: When I say "South Texas," I'm not sure what I mean. I guess South Texas isn't defined in our minds, except probably by what we know generally as South Texas. But I wasn't speaking of Southern District of Texas. I think I was speaking just of South Texas.

MR. PONCIO: And that's what we need to clarify as part of the discovery is, for example, certain companies will have regions defined. We have another class in front of Judge Ramos where they have a region that's defined as Corpus Christi, one defined as Odessa, one defined in East Texas as Bridgeport. So they have three different regions. We've already certified in that case a class as to Corpus Christi

1 Division. That's how we intend to do it in this case is a
2 piecemeal --
3     THE COURT: Why?
4     MR. PONCIO: Well, it depends on what works best for
5 the Court. That's what we have to look at as part of the
6 initial discovery.
7     THE COURT: Well, what works best for the Court is
8 for the Court to establish a precedent on one case and let
9 everybody follow the law the Court makes in that one case.
10     MR. PONCIO: We can do that, Your Honor. We just
11 have to see how they divide up their supervision.
12     THE COURT: And by "precedent," I mean one Plaintiff
13 and one Defendant. That's easy. But that's not going to work
14 probably, for your purposes.
15     MR. PONCIO: Yes, Your Honor.
16     THE COURT: Okay. Does anybody else need any -- do
17 any of you need anything from me, other than what we've talked
18 about?
19     MR. PONCIO: No, Your Honor.
20     THE COURT: Okay.
21     MR. MUSKAT: Nothing else, Your Honor. There's, Adam
22 and I can probably -- Mr. Poncio and I can probably meet to
23 confer about this, but one thing that we may want to consider
24 is to the extent there is discovery that occurs that relates to
25 this conditional certification issue, I have had other cases

1  where the parties have gotten into disagreements about whether
2  that type of bifurcated discovery means that the parties get to
3  take two or more depositions of the same person.
4      Or you know, should it be that if a deposition is
5  taken, it is taken for purposes of conditional certification
6  and the potential merits, so that people are only being deposed
7  once.  That's the way we prefer to do it.
8      Again, I haven't broached this with Mr. Poncio, and I
9  don't mean to put him on the spot here, but it's just, it's an
10 issue that arises out of the potential bifurcation of discovery
11 that I think we'll just need to address.
12     But Adam, we can talk about that, you know, offline
13 and see if we can agree.
14     MR. PONCIO:  That will be fine.
15     THE COURT:  Well, I think it's best that you discuss
16 it first, because I have different thoughts about it on both
17 sides, as you've raised the issue.  So -- I don't know how you
18 could have initial discovery without some rather complete
19 understanding of what's occurring.  At the same time, I don't
20 know why you would want to talk about complete, thorough
21 discovery when you don't know that you're going to get there.
22     So it seems to me it's going to be up to you to sort
23 of, since you know the issues of the case, establish the
24 boundaries and then come to me.
25     MR. PONCIO:  Yes, Judge.

1           THE COURT: Okay.

2           MR. MUSKAT: We can do that, Your Honor.

3           THE COURT: All right. Anything else?

4           MR. PONCIO: No, Your Honor.

5           THE COURT: Mr. Muskat, where are you?

6           MR. MUSKAT: I'm in Houston, Your Honor.

7           THE COURT: Why aren't you here?

8           MR. MUSKAT: Well, I apologize for that, Your Honor.
9 The flight that I was on this morning had mechanical
10 difficulties, and there were no other available planes. So I
11 just wasn't going to get there in time. I apologize for that.

12           THE COURT: No, I just -- no, that's all right. I
13 just, I wondered if this cold front, storm we're supposed to
14 have is already in Houston. That's what I was wondering.

15           MR. MUSKAT: Well, you know, it seems to be on its
16 way in, although they told me that was not the reason for the
17 delay. They suggested the plane had problems, but --

18           THE COURT: Who, what --

19           MR. MUSKAT: But maybe that played a role.

20           THE COURT: When you say "they" suggested that, you
21 mean that's not an answer you're willing to accept without a
22 deposition?

23           MR. MUSKAT: Well, they told me six or seven times
24 this morning that the plane was just about to arrive and I need
25 not worry. And after the third or fourth time of them saying

1  that and it turning out not to be true, I lost some confidence
2  in them.
3          THE COURT:  What airline?  What airline?
4          MR. MUSKAT:  Oh, I'm sorry.  Southwest.
5          THE COURT:  Hmm, okay.  Well, very good.  Then nobody
6  has anything further, that will be it.
7          MR. PONCIO:  Thank you, Your Honor.
8          THE COURT:  Okay, thank you.
9          MR. MUSKAT:  Thank you, Your Honor.
10         MR. RANGEL:  May we be excused, Your Honor?
11         THE COURT:  Yes, thank you.
12      (Proceedings concluded at 1:47 p.m.)

I, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

/s/ Molly Carter                    February 3, 2014
Molly Carter                        Date