IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ROSENDO ZAMORA, ET AL. | § § § | |
| v. | § § § § | CIVIL ACTION NO. 2:13-CV-00326 |
| BAKER HUGHES INCORPORATED | § | |

### PLAINTIFF'S MOTION FOR
### CONDITIONAL CLASS CERTIFCATION,
### EXPEDITED NOTICE TO POTENTIAL PLAINTIFFS
### AND TO TOLL THE STATUTE OF LIMITATIONS

Plaintiff, individually and on behalf of other similarly situated past employees of Baker Hughes Oilfield Operations, Inc. (misidentified as Baker Hughes Incorporated in caption and hereafter "Defendant"), Motion for Conditional Class Certification, requesting notice, tolling and would show the court as follows:

### MISCLASSIFICATION CLASS

Plaintiff, individually and on behalf of other similarly situated past employees, requests class certification based upon the Defendants *misclassification* of purported class memebers as exempt from the Fair Labor Standards Act as shown by Defendant's written policy change dated March 26, 2012, reclassifying Plaintiff and other similarly situated past employees from exempt to non-exempt hourly employees entitled to being paid overtime for all hours worked over forty hours per week under requirements of the Fair Labor Standards Act. (Ex.1). The misclassified employees comprise a class identified by Defendant as: (Ex.1)

    Field Operators -- FES
    Field Supervisors --- FES
    Field Specialists I & II -- FLD

(see Ex. 5-1: Defendant's HR defined scope of the time keeping policy as "within the Field Operator or Field Specialist job family".)

The class of Plaintiff and similarly situated employees were employed by Defendant prior to April 15, 2012. All proposed class members were subject to the same policy which violated the Fair Labor Standards Act: employees misclassified by Defendant as exempt under the Fair Labor Standards Act and not paid overtime for hours worked over forty hours per week prior to actual written policy change implemented on or about April 15, 2012.

Plaintiff filed this action on October 21, 2013. The defendant correctly classified the class effective on or about April 15, 2012. Class certification is necessary to protect the FLSA rights of all potential class members whose limitations would run if not allowed to join this action. Employees comprising the class would get the benefit of October 21, 2013, as this date to determine their limitations period.

## REQUEST FOR § 216(B) NOTICE TO POTENTIAL PLAINTIFFS

### Legal Standards: The District Court is Authorized to Issue Notice to the Potential Opt-in Plaintiffs and Should Do So Immediately.

The FLSA's "collective action" provision allows one or more employees to bring an action for overtime compensation on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).   The remedial nature of the FLSA and the purposes of Section 216 militate strongly in favor of allowing cases to proceed collectively. *Roussell v Brinker Int'l, inc*., 2008 US Dist LEXIS 52568 (SD Tex. July 2008).

Plaintiff seeks certification under the more lenient first stage of the Lusardi two stage process.  The approach for class certification set out in *McKnight* involves a two stage process: (*McKnight* at 801-803)

FLSA class certification:

Southern District uses Two-step *Lusardi* approach: *McKnight* at 801-802. Initially: (*McKnight* at 802)

a. 'Neither stage of certification is an opportunity for the court to assess the merits of the claim by deciding factual disputes or making credibility determinations'.

b. "The focus …. is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated…. With respect to their allegations that the law has been violated."  *McKnight* at 802 citing *Young v Cooper Cameron Corp*., 229 FRD 50, 54 (SD NY 2005)

c. "Whether in the first or second step in the sec.216(b) collective action certification process, plaintiffs need not prove the merits of their claim." *McKnight* at 802.

d. "That is, plaintiffs do not have to show that the employer actually violated the FLSA."

e. "to the extent that Defendant would now argue the merits of the case, such debates are premature and inappropriate."

At either stage: "whether at the notice stage or on later review, collective action under the FLSA, 29 USC sec.. 201 et seq, is not precluded by the fact that the putative plaintiffs performed various jobs in differing departments and locations." *Donahou v Francis Services, Inc*., 2004 US Dist LEXIS 9355 (ED Louis)

The First Stage (called the Notice Stage) requires Plaintiff to make a minimal showing to establish the existence of a FLSA class. *McKnight* at 801.  At this stage Plaintiff makes a showing that 'potential members 'were together the victims of a single decision, policy, or plan'. *McKnight* at 801-02.  It is only required to show that similarly situated individuals exist. "That is, plaintiffs do not have to show that the employer actually violated the FLSA."  *McKnight* at 802. Also "to the extent that Defendant would now argue the merits of the case, such debates are premature and inappropriate." *McKnight* at 802.

**Defendant Establishes Similarly Situated Individuals Exist**

Page 3

Under Section 216(b), an employee need only show that he is suing his employer for himself and on behalf of other employees "similarly situated." *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995).

Plaintiff produces evidence that establishes that the defendant specifically identified that similarly situated individuals, (persons misclassified as exempt under the FLSA) exist who were not paid overtime for hours worked over hours worked over forty per week and identified the jobs the employees performed as set out in Exhibit 1. These persons are identified as: Field Operators, Field Supervisors, and Field Specialists.

Plaintiff establishes Defendant employees Field Operators in Texas and Oklahoma. (Ex. 2).

Plaintiff produces Defendant's March 26, 2012, memorandum authorizing the purported class to receive overtime payments which supports a finding that there are similarly situated individuals where the defendant did in fact violate the overtime provisions of the FLSA for the class prior during the class time period to the defendant reclassifying the class as non-exempt. (Ex.1). Plaintiff's timesheets before and after the policy change evidence no overtime paid prior to and overtime paid subsequent to the reclassification. (Ex. 3-1, 3-2).

### Aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted

Plaintiff and all purported class members assert the same claim: Defendant misclassified their job position as exempt prior to the March 26, 2012, memo, denying them overtime under the FLSA; then on March 26, 2012, correctly classified them as non-exempt hourly employees and qualified to be paid overtime under the FLSA for hours worked over forty hours per week.

## ADDITIONAL FACTS

### Plaintiff and Similarly Situated Persons were Victims of the same same rule / policy / practice / plan of the Defendant : misclassification

Prior to April 15, 2012, Plaintiff and all members of the proposed class were not paid overtime for hours worked over forty hours per week in violation of the FLSA because defendant classified all as exempt and not eligible to be paid overtime. (Ex. 1). On March 26, 2012, Defendant changed its overtime policy regarding these class members and classified them as 'non-exempt' from the provisions of the Fair Labor Standards Act and that Defendant would begin to pay the proposed class overtime for all hours worked over forty hours per week at a rate of 1.5 times their regularly hourly rate on April 15, 2012. (Ex.1).

The proposed class is identified in defendant's written policy correcting the exempt misclassification and Defendant identifies the following employees: (Ex.1)

Field Operators -- FES
Field Supervisors --- FES
Field Specialists I & II -- FLD

Plaintiff was a Field Operator -- FES who was employed before and after the defendant corrected the misclassification of Field Employees. (Ex.2). Plaintiff was employed on or about February 13, 2012, to June 18, 2013. (Ex.2). Defendant reclassified Plaintiff from exempt to non-exempt on March 26, 2012, effective on or about April 15, 2012. (Exs.1, 2)  Plaintiff's job duties were the same before and after March 26, 2012, and remained the same during Plaintiff's entire employment. (Ex. 2). Prior to the policy change, Plaintiff was salaried and fixed day rate with no overtime for hours worked over forty hours per week. (Ex.3-1: pay period 4/1/12 to 4/14/12). (Plaintiff worked overtime during this pay period as shown by payment of 'FIELDSRV' which was total of day rate payments--Ex.1,2).  After the policy change, Plaintiff was removed as a salaried exempt employee and was paid $19.10 hourly with an overtime rate of 1.5 times hourly equaling $28.65 per hour. (Ex.3-2: pay period 4/29/12 to 5/12/12).

**Class Area**

Certification is proper in cases involving geographically diverse locations where the same corporate policy applies to all such locations. *Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 2012 WL 5381767, at *5 (S.D. Tex. 2012). Plaintiff submits that Defendant's correction of misclassification of the class is direct evidence of the same policy applying to all Defendant's locations in the United States.

The area of the class consists of all locations in the United States where the Defendant classified the proposed class members as exempt from the overtime provisions prior to on or about April 15, 2012. Plaintiff submits that the scope of this area is and includes: (see Ex. 5-1: Defendant's HR defined scope)

    a.    "<u>the US Region, inclusive of Alaska, US Land, Gulf of Mexico</u>" as set out in Defendant's "Time Entry (policy) for Field Specialists, Field Supervisors and Field Operators"; and

    b.    "within the Field Operator or Field Specialist job family".

Plaintiff worked within this scope and in the Defendant's Fluids Division in Texas which is in Defendant's United States US Region. Defendant's United States US Region personnel and wage policies are disseminated from its Human Resources Department, Western Hemisphere. (Exs. 5,6,7) Plaintiff's Request for Production No. 12 requested copies of Plaintiff's Employee Handbook. Defendant provided and identified documents BH 00184 to BH 00414. (Ex.4: RFP 12).

Defendant's Human Resource Policy, United States, US Region, identifies common Time Entry policy for all proposed class members who are identified as non-exempt/hourly paid (Ex.5: BH 397-407):

    Field Operators -- FES
    Field Supervisors --- FES
    Field Specialists I & II -- FLD

Defendant has same overtime policy for United States issued by same Vice President its Human Resource Department, Western Hemisphere. (Ex.6: issued 12/25/2011; Ex. 7: issued 2/1/13)

**Class Time Period**

Conditional class certification is sought for the period from October 21, 2010, to the time Defendant corrected the misclassifications and began paying overtime on or about April 15, 2012, pursuant to the FLSA.  (DE 1: Plaintiff filed suit on October 21, 2013; Three year limitation begins on October 21, 2010; Ex. 1: Defendant corrected the misclassification on or about April 15, 2012

**other aggrieved employees exist or would want to join the class**

Standards of Proof set forth in *McKnight* which satisfy the element that other similarly-situated individuals exist who would want to opt in to a certified collective action: (Id at 805)

(*McKnight granted conditional certification without declarations from potential class members and relied upon declaration of a plaintiff that other employees would interested in knowing about the case and would consider joiningt – Id at 805*)

McKnight:
a. Affidavits from potential class members affirming intention to join suit are ideal for analysis of whether the putative class members were together the victims of a single decision, policy, or plan.

b. "However, affidavits per se are not required and a named plaintiff may submit some other form of evidence that the additional aggrieved persons exist and want to join the suit. Citing *Simmons* US Lexis 5002, 2007 at *9

Plaintiff

Standards of Proof set forth in *Heeg & Semon* which satisfy the element that other similarly-situated individuals exist who would want to opt in to a certified collective action:

*Heeg & Semon v Adams Harris, Inc.,* 2012 US Dist LEXIS 156151 (SD Houston 2012).

a. 'Plaintiffs need only show that it is reasonable to believe that there are other aggrieved employees who were subject to an allegedly unlawful policy or plan. *Heeg & Semon* at sec.III Analysis sec. A.1.

b. Plaintiffs burden at this stage is low

    c. Evidence that there are at least 18 employees who might be eligible under the plaintiff's proposed class definition

Substantial Number of Other Potential Plaintiffs Exist

At the location where the Plaintiff was employed, the Corpus Christi offices, the Defendant employed over twenty Field Operators. (Ex.2). Defendant acknowledges that it misclassified the class of purported plaintiffs. (Ex.1). Defendant is a nationwide company. (Ex.2)

<b>REQUEST FOR EXPEDITED DISCOVERY AS TO<br>IDENTITY OF POTENTIAL PLAINTIFFS</b>

Plaintiffs do not have access to a list of all potential class members such that notice of this suit might be provided. Plaintiffs have no access to the vast majority of employees who have worked or who are working for Defendants. Plaintiffs believe there to be dozens of salaried employees who were denied proper overtime pay for hours worked during the relevant time period and were told they did not qualify for overtime. Plaintiffs do not have access to these individuals' addresses or telephone numbers. Therefore, Plaintiffs request that the court compel Defendants to provide

    (1)    the full name of each putative class member as defined above; and

    (2)    the last known address, drivers license numbers and social security number for each individual.[1]

Requiring Defendants to provide this information will carry out the purposes of § 216(b) and help ensure that each affected individual will be located and provided with appropriate notice so each can determine whether he/she wants to "opt-in" to this collective action. All of the

---

[1] A valid social security number is the only highly accurate means of identifying a current address through available "skip trace" technology. A significant percentage of the notices sent to putative class members will be returned undeliverable because the address provided by the employer is not current. As an alternative to compelling Defendants to provide social numbers to Plaintiffs' counsel, Plaintiffs request that the social security numbers be provided, under appropriate protective order, to an independent third party to be processed to obtain a current address prior to mailing the notices.

information requested above is necessary to locate these individuals. Accurate and timely notice is critical to the preservation of employees' legal rights in FLSA collective actions. Plaintiffs request that all potential "opt-ins" be given sixty (60) days from the date of mailing of the notices to "opt-in" to the collective action by which their consent forms must be postmarked.

## THE NEED FOR EXPEDITED ACTION

The statute of limitations continues to run for potential plaintiffs until their consent to opt-in is signed and filed with the court. *See* 29 U.S.C. § 256. Every day that passes reduces the potential recovery of each putative class member and can even eliminate potential opt-ins from the collective action. Therefore, Plaintiffs request that:

(a) The court considers this motion as soon as possible after submission;

(b) The court order Defendants to provide Plaintiffs information listed above within ten (10) days from the court's order and in electronic form;

(c) The court authorize notice and authorize that such notice may be issued immediately after Defendants provide the information listed above; and

(d) That the court impose a deadline of 60 days from the date of issuance of the notices within which time individuals can "opt-in" to this collective action by mailing their respective consents to counsel for Plaintiffs who, in turn, will file the consents with the court. A copy of the proposed consent will be provided.

## MOTION TO TOLL THE STATUTE OF LIMITATIONS

As noted above, FLSA collective actions require potential plaintiffs to affirmatively "opt-in" in order to join the "class" and toll the statute of limitations. *See* 29 U.S.C. §§216(b) and 256. Thus, timely discovery of, and notice to, potential class members is essential.

To avoid prejudice to the putative class members while the issue of notice is resolved, Plaintiff s request an order of the court tolling the statute of limitations during the pendency of

Plaintiffs' Motion for Expedited Notice, or for the court to consider and rule upon the Motion on an expedited basis.

### A. ARGUMENT

The "prime purpose of the [FLSA] was to aid the unprotected, unorganized and lowest paid of the nation's working population." *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 797 n.18 (1945). If an employer's violations of the FLSA are alleged to be widespread (as alleged in the instant case), the FLSA grants an aggrieved employee the right to bring an action "(on) behalf of himself….and other employees similarly situated" as a "collective action." *See,* 29 U.S.C. §216(b). The purpose of collective actions is to provide one lawsuit in which the claims of different employees (different in amount but all arising out of the same character of employment) can be presented and adjudicated. *Shain v. Armour & Co.,* 40 F.Supp.488, 490 (W.D. Ky.1941).

Since the statute of limitations is generally not tolled for any individual class member until that individual has filed a written consent to join the lawsuit with the court, and since it is likely other current and former employees of Defendants will not volunteer to pursue their claims "without the court's issuance of the protective cloak of (a) notice of a collective action," Plaintiffs request that this court toll the statute of limitations for the putative class members. *Alonzo Maxie, et al*. v. *A-Rocket Moving & Delivery, Inc.,* Civil Action No. H-03-2869 (S.D. Tex. December 12, 2003) (J. Atlas).

### 1. The Doctrine Of Equitable Tolling Applies To FLSA Cases.

The doctrine of equitable tolling allows a court to suspend the statute of limitations where, under the circumstances of the case, it would be inequitable to enforce the statute of limitations. This doctrine clearly applies to cases brought under the FLSA because the doctrine

of equitable tolling, "is read into every federal statute of limitations." *Holmbeg v. Armbrecht,* 327 U.S. 392, 397 (1946). Thus, it is within this court's discretion to apply the doctrine of equitable tolling to cases brought under the FLSA. *See e.g. Baldozier v. American Family Mutual Ins.*, 375 F.Supp.2d 1089, (D. Colo. 2005)(finding that "FLSA claims should be equitably tolled as of the date Plaintiffs filed their Complaint . . . .").

### 2. The Circumstances Of This Case Warrant A Tolling Of The Statute Of Limitations.

The Supreme Court, the Fifth Circuit, and numerous other courts in the United States have determined that the pendency of a class action tolls the statute of limitations for the class members until a decision is made regarding certification.[2] *Salazar-Calderon v. Presidio Valley Farmers Ass'n,* 765 F.2d 1334, 1349-51 (5th Cir. 1985)(holding that the statute of limitations for putative class members is tolled during the pendency of a decision regarding certification)(citing to *Crown Cork & Seal Co., Inc., v. Parker,* 462 U.S. 345, 353-54 (1983)(holding that the statute of limitations to punitive class is tolled pendency of a decision or certification); *see also, Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1349-51 (5th Cir. 1985); *Alonzo Maxie, et al v. A-Rocket Moving & Delivery, Inc.*, Civil Action No. H-03-2869 (S.D. Tex. December 12, 2003) (J. Atlas)(statute of limitations was tolled from date the plaintiffs' motion for notice was filed until close of the opt-in period). Importantly, the opt-in nature of FLSA collective actions does not alter this result. *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1379-84 (11th Cir. 1998).

---

[2] Procedurally, FLSA collective actions and "class actions" brought under Federal Rule of Civil Procedure 23 share few similarities because each arises from a different mandate (i.e. FLSA collective actions are the product of Federal statute whereas Rule 23 class action arise from procedural rule). As such, even though Rule 23 is supported by a much more robust body of case law, most of it has limited application in the FLSA context. However, the concept of equitable tolling arises neither from statute nor procedural rules, but from the equitable powers of the courts. As such, it should be applicable equally to FLSA collective actions as it is in the Rule 23 context and existing Rule 23 precedent should provide useful guidance.

This court's decision on notice may impact the lives of dozens of current and former employees who likely have no idea they may have been illegally denied substantial wages by Defendants.  Moreover, it is undisputed that the benefits of an FLSA depend entirely on employees receiving accurate and timely notice of their right to participate in a collective action (so that they can make informed decisions on whether to participate).

## VII.  PRAYER

Plaintiffs pray that this court would issue notice to potential plaintiffs.  Plaintiffs pray that this matter be decided in an expedited manner, that the discovery requested be granted on an expedited basis, and that the court-authorized dissemination of the suggested notice to potential members of this collective action be allowed in an expedited manner.  Alternatively, Plaintiffs pray that this court toll the limitations period applicable to the putative class pending a decision on this matter.

Plaintiffs pray that defendant be ordered to disclose  the full name of each putative class member as defined above; the last known address, drivers license numbers and social security number for each individual so that notice may be correctly forwarded..

Respectfully Submitted,

By: /s/ Adam Poncio
Adam Poncio
Southern District No. 194847
State Bar No. 16109800
PONCIO LAW OFFICES
A Professional Corporation
5410 Fredericksburg Rd., Suite 109
San Antonio, Texas 78229-3550
Telephone:    (210) 212-7979
Facsimile:     (210) 212-5880


Chris McJunkin
Southern District No.23548
State Bar #13686525
2842 Lawnview
Corpus Christi, Tx. 78404
Tel: (361) 882-5747
Fax: (361) 882-8926


## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of June, 2014, a true and correct copy of the foregoing document was delivered to counsel pursuant to FRCP.

Michael J. Muskat
Gabrielle S. Moses
Muskat, Martinez & Mahony, LLP
1201 Louisiana Street, Suite 850
Houston, Texas 77002
(713) 987-7850 Telephone
(713) 987-7854 Facsimile

/s/ *Adam Poncio*
Adam Poncio